UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Empire Gen Holdings, Inc. and Empire Generating Co., LLC,**

          **Plaintiffs,**

      -v-                1:11-CV-1509 (NAM/ATB)

**The Governor of the State of New York, in his official capacity, and the State of New York,**

          **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Hiscock & Barclay, LLP
David G. Burch , Jr., Esq., of counsel
Kevin R. McAuliffe, Esq., of counsel
One Park Place
300 South State Street
Syracuse, New York 13202-2078

Hon. Eric T. Schneiderman, Attorney General of the State of New York
Aaron M. Baldwin, Esq., Assistant New York State Attorney
Bruce D. Feldman, Esq., Assistant New York State Attorney
The Capitol
Albany, New York 12224
Attorney for Defendants

**Hon. Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this action, plaintiffs seek money damages, a permanent injunction barring the enforcement of sections 33 and 34 of the New York State Tax Law, and judgment declaring sections 33 and 34 unconstitutional.[1] Defendants move (Dkt. No. 9) to dismiss the complaint for

---

[1] The New York State Tax Law contains two sections 33 and two sections 34. Throughout this Memorandum-Decision and Order, the Court's citations to these sections refer to those added by L. 2010,

lack of subject matter jurisdiction, based on the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and the principle of comity. The Court agrees and dismisses the action under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## FACTS

The facts, as set forth in the affidavit of Curtis A. Morgan, President and Chief Executive Officer of plaintiff Empire Generating Co., LLC ("EGC"), a wholly-owned subsidiary of plaintiff Empire Gen Holdings, Inc. ("EGH"), are as follows:

> 2. EGC caused the construction of a 635 MW natural gas fired electric generating plant (the "Facility") on property located at 75 Riverside Ave. in Rensselaer, New York, which property is sometimes known as the "South 40" parcel (the "South 40" or the "Remediated Lands").
> 3. Prior to 2004, EGC, then known as Besicorp-Empire Power Company, LLC, entered into an agreement with BASF Corporation (the "BASF Agreement"), the owner of the South 40, the terms of which included an obligation on the part of BASF to:
>> (i) undertake the preliminary remediation of the South 40,
>> (ii) execute with EGC a long-term lease of the South 40 once a workplan approved by DEC had been completed, and
>> (iii) join with EGC in the execution of a Brownfield Cleanup Agreement with DEC calling for the remediation of the environmental contamination contained on the South 40, and providing an avenue for EGC to realize Brownfield credits following the remediation and redevelopment of the South 40.
> 4. In June 2004, Besicorp-Empire Power Co., LLC and BASF entered into a Brownfield Site Cleanup Agreement (Index # A -0507-0604).
> 5. Pursuant to the BASF agreement, EGC leased the South 40 pursuant to a long term ground lease executed on July 16, 2007.
> 6. In February 2008, the Brownfield Cleanup Agreement was amended when the name of Besicorp-Empire Power Co., LLC was changed to Empire Generating Co, LLC. Amendment No. 1 to the Brownfield Cleanup Agreement memorialized that an application notifying DEC of the name change had been submitted to the agency, the approval by DEC of the application, and the acknowledgment by DEC that EGC was eligible to participate in the Brownfield site cleanup program as a volunteer as defined

---

c. 57, pt. Y.

in ECL [Environmental Conservation Law] 27-1405(1)(b).

7. Prior to the July 16, 2007 closing, and in furtherance of its obligations under the Brownfield Cleanup Agreement, EGC, through BASF, performed various remedial activities pursuant to work plans filed with and approved by DEC in furtherance of the goal of obtaining final approval from DEC for the reutilization of the remediated lands.

8. On or about February 2008, EGC filed a final engineering report of remedial actions undertaken on the remediated lands with DEC.

9. On March 10, 2008, DEC notified EGC and BASF that DEC had approved the final engineering report and, accordingly, DEC issued the Certificate of Completion.

10. Thereafter, BASF and EGC executed a notice of Certificate of Completion, the original of which was recorded in the Rensselaer County Clerk's office on March 13, 2008.

11. EGC expended $723,932,631 in relevant costs to prepare the South 40 to support the commercial production of electric energy and to construct the Facility.

12. In or about September 2010, EGC placed the Facility in service and began the commercial production of electric energy.

13. EGC fully complied with its obligations under the Brownfield Cleanup Agreement in a timely manner.

14. As a party to a BCA [Brownfield Cleanup Agreement] and having received a Certificate of Completion from the DEC, EGC was entitled to receive a Brownfield Redevelopment Credit in the amount of $86,871,916 based on its expenditure of $723,932,631 in preparing the South 40 to support the commercial production of electric energy and in constructing the Facility.

15. EGC is an indirectly wholly owned subsidiary of Empire Gen Holdings, Inc. ("EGH"), and is disregarded for tax purposes.

16. Pursuant to the provisions of the ECL and Section 23 of the New York State Tax Law, EGH, for the tax year 2008, filed a CT-611 claim for Brownfield credit with its New York State Tax Return. EGH, by virtue of the July 2007 closing with BASF, had acquired the rights to claim the cost of remediating the site which in turn empowered it to claim a site preparation credit on form CT-611.

17. On its 2010 New York State General Business Corporation Franchise Tax Return, EGH reported a franchise tax liability of $336,354 based on its computation of capital base.

18. However, Sections 33 and 34 of the New York Tax Law enacted by Chapter 57 of the Laws of 2010 (the "Deferral Provisions"), required EGH to use a portion of each of its credits to reduce its Capital Base Tax by $336,354, and, therefore, limited its refund to $1,663,633, with the remainder deferred to future years. If the Deferral Provisions were not in place, EGH would have received a refund for 2010 from the State, which would have included the

entire Brownfield Redevelopment Credit of $86,871,916.

19. EGC and EGH relied on the timely receipt of credits promised under the Brownfield Cleanup Agreement and incorporated statutes and regulations in structuring the transaction which led to the South 40's remediation and the Facility's construction. In fact, but for the State's promise to timely pay the credits in exchange for these activities, EGC would not have undertaken the remediation or the Facility's construction.

20. The legislative enactment of the Deferral Provisions occurred after EGC had invested and spent its own equity and borrowed debt capital to remediate the brownfield site and construct the state-of-the-art Empire power generating Facility.

21. The deferral also occurred within days of the Facility beginning commercial operations and a few months before it would have been able to claim the entire amount of credits on its 2010 State Tax Return.

22. Despite the fact that the amount of money invested by EGC exceeded original estimates due to the severity of the contamination and ground quality issues at the site, EGC fulfilled its commitment to complete the remediation and construction of the Facility which created over 500 jobs during one of the worst economic downturns in U.S. history and provided much needed clean and cost effective energy to the residents of the State of New York. In essence, EGC fulfilled its commitments despite the very same economic situation that the State used to renege on its obligations.

23. Receiving the credits on the timetable promised in the Brownfield Cleanup Agreement was a key element of the legislation that EGC relied upon when deciding to proceed with the investment in 2007. The State's action to deny EGC and EGH the earned credits as anticipated in the Brownfield Cleanup Agreement has severely exacerbated the financial distress of EGC and EGH who are currently struggling in a weakened market for electricity in the State. Evidence of the severity of the weakness in the New York electricity market and the significant economic challenge EGC and EGH face are the numerous generators in the State that are in financial distress or bankruptcy, or have retired or mothballed, or filed for approval to do so.

24. The continued delay in payment of the Brownfield Redevelopment Credit, now well past the timetable the State previously promised, continues to harm EGC and EGH.  EGC and EGH would have been able to pay down a large portion of the outstanding debt incurred in connection with the remediation of the contaminated site and construction of the Facility upon receipt of the refund. This would eliminate ongoing interest on the debt and would put the Facility in a significantly stronger financial position to weather the business challenges facing the electric generation industry and avoid the consequences mentioned above.

25. Unfortunately, the State's action to defer the credits, a risk that could not have been known when EGC and EGH made the commitments to proceed

> with remediation and construction, have jeopardized the financial health of the Facility and should not be permitted to stand.

(Citations to record omitted.)

Briefly, the complaint alleges that sections 33 and 34 of the New York State Tax Law, enacted as part of the 2010 New York State budget legislation, L. 2010, c. 57, violate the United States and New York State Constitutions. The effect of sections 33 and 34 is to increase State tax revenues temporarily by deferring the availability of certain tax credits. These sections limit the application of certain tax credits to $2 million during the taxable years 2010, 2011 and 2012, and defer the application of any excess tax credits until 2013. *See* N.Y. Tax Law, § 33. Between 2013 and 2015, the affected taxpayer is permitted to claim specified percentages of the deferred credits. *See* N.Y. Tax Law, § 34.

The complaint claims that in 2010 plaintiff EGH was entitled to a tax credit of nearly $87 million due to plaintiff EGC's participation in New York State's Brownfield Cleanup Program, which provided incentives, including tax credits, for the reclamation of polluted lands and the redevelopment of the remediated sites. *See* ECL § 27-1403; N.Y. Tax Law §§ 21, 22, 23. The brownfield redevelopment tax credits authorized in section 21 are available to a taxpayer incurring costs for the remediation or redevelopment of a brownfield site; the site becomes qualified for the credits when the New York Department of Environmental Conservation issues the Certificate of Completion. *See* ECL § 27-1419; N.Y. Tax Law § 21(b)(1).

After entering into a Brownfield Cleanup Agreement, plaintiff EGC remediated the subject property and received a Certificate of Completion on March 10, 2008. According to plaintiffs, but for the enactment of sections 33 and 34 of the Tax Law, they would have received a tax refund for 2010 from New York State which would have included the full brownfield redevelopment credit

of $86,817,916. Plaintiffs seek damages; an injunction enjoining the State from deferring the tax credits; and judgment declaring that sections 33 and 34 violate the takings and contracts clauses and deprive plaintiffs of due process and equal protection under both the United States and New York State Constitutions.[2]  In support of their Fifth Amendment Takings Clause claim, plaintiffs allege that sections 33 and 34 effectively force them "to bear a public burden that should fairly be borne by the taxpayers as a whole."  Plaintiffs also allege that, in enacting sections 33 and 34, the State used its taxing and spending powers to impair plaintiffs' rights under the Brownfield Cleanup Agreement in violation of the Contracts Clause.  U.S. Const. Art. I, § 10.

## DISCUSSION

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Defendants argue that plaintiffs cannot carry that burden, because plaintiffs' challenge to sections 33 and 34 is barred by the Tax Injunction Act ("TIA"), 28 U.S.C. §1341, and the principle of comity.  As set forth below, the Court agrees.

"[F]ederal courts are precluded from exercising jurisdiction over challenges to state tax assessments, regardless of the type of relief sought."  *Bernard v. Village of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994) (citing *Long Island Lighting Co. v. Brookhaven*, 889 F.2d 428 (2d Cir. 1989).  The Second Circuit explains: "While it is the Tax Injunction Act that prevents federal courts from giving injunctive relief, or declaratory relief, as long as there is a plain, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking

---

[2] Although the "Wherefore" clause of the complaint does not request money damages, individual causes of action do.

damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court." *Long Island Lighting*, 889 F.2d at 431 (citations omitted).

The Tax Injunction Act ("TIA"), 28 U.S.C. §1341, provides in full:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976). A State's need to administer its fiscal operations "was the principal motivating force behind the act: ... [the TIA] was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981) (citations omitted).

The comity doctrine as applied in state taxation cases is "[m]ore embracive than the TIA."[3] *Levin v. Commerce Energy, Inc.*, __ U.S. __, 130 S.Ct. 2323, 2328 (2010). Comity "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Id.* Thus, where the State provides a remedy that is plain, adequate, and complete, "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981).

It is undisputed that the available New York State remedies satisfy the procedural

---

[3] Prior to the enactment of the TIA, federal courts had become "free and easy with injunctions" in state tax cases. *Levin v. Commerce Energy, Inc.*, __ U.S. __, 130 S.Ct. 2323, 2331 (2010) (citation omitted). The TIA was passed to eliminate this practice by closing the "loopholes" courts had opened in the comity doctrine. *Id.* at 2331, 2336. The TIA did not restrict the principle of comity; rather, it "may be best understood as but a partial codification of the federal reluctance to interfere with state taxation." *Id.* at 2331-32.

adequacy requirements of the TIA and comity.  *See Greenberg v. Town of Scarsdale*, 2012 WL 1738967, *1 (2d Cir. May 17, 2012); *Long Island Lighting Co. v. Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989); *see generally Fair Assessment*, 454 U.S. at 116, n.8 (holding there is "no significant difference" between "plain, speedy and efficient" standard of TIA and "plain, adequate, and complete" standard governing comity).  Thus, the Court turns to consider the nature of plaintiffs' claims.

In their complaint, plaintiffs seek relief from sections 33 and 34 of the New York State Tax Law.  Section 33(1)(a) provides that, for the taxable years of 2010, 2011, and 2012:

> [T]he excess over two million dollars of the total amount of the tax credits specified ... that in each of those taxable years would otherwise be used to reduce the taxpayer's tax liability to the amount otherwise specified in this chapter or be refunded or credited as an overpayment will be deferred to and used or refunded in taxable years beginning on or after January first, two thousand thirteen in accordance with the provisions of section thirty-four of this article.

Among the tax credits covered by section 33 is the brownfield redevelopment tax credit in issue in the instant case. *See* N.Y. Tax Law, § 33(3)(a).  Section 34 provides for a "phased-in" application of the deferred credits, by permitting the taxpayer to claim specified percentages of the deferred credits in the taxable years 2013 through 2015.  Sections 33 and 34 were enacted as part of New York State's budget bill of 2010, *see* L.2010, c. 57, and plaintiffs note in their complaint that "[t]he Legislature's stated purpose for [the tax-credit deferral portion of the bill] ... is that it was needed to create a balanced budget."

The Court finds that plaintiffs' challenge to sections 33 and 34 seeks "a federal-court ruling on a local tax matter" prohibited by the TIA and the comity doctrine.  *Greenberg*, 2012 WL 1738967 at *1.  As noted, sections 33 and 34 were part of the State's 2010 budget bill, intended to

create a balanced budget. By restricting the availability of certain tax credits for the taxable years 2010, 2011, and 2012, sections 33 and 34 increased tax revenue during those years. The relief plaintiffs seek – *i.e.*, money damages and a judgment declaring the statutes unconstitutional and enjoining their enforcement – would interfere with New York's assessment and collection of tax revenue, and thus with New York State's administration of its fiscal operations. This is "precisely the type of suit the TIA and the principle of comity are intended to prohibit." *Id.*

The Court is not persuaded by plaintiffs' argument that the brownfield redevelopment credit "has nothing to do with offsetting taxes – it is payment of promised consideration for cleanup and improvement of a polluted parcel of land." In plaintiffs' view, "the only aspect of the [brownfield cleanup] Program that has anything to do with taxation is that the State chose to use its income tax process as a payment mechanism for the incentives." Plaintiffs' argument cannot alter the facts that the promised consideration was a tax credit; that in challenging sections 33 and 34 plaintiffs are seeking the benefit of that credit; and that the effect of the relief plaintiffs seek would be a reduction in the taxes payable by plaintiffs for 2010. Plaintiffs acknowledge the relationship between the brownfield redevelopment credits and the State's administration of its fiscal operations when they assert that sections 33 and 34 "effectively force plaintiffs and others similarly situated to bear a public burden that should fairly be borne by the taxpayers as a whole."

On review of the complaint and the applicable law, the Court concludes that plaintiffs' challenge to sections 33 and 34 is barred by the TIA and the principle of comity. Defendants' motion (Dkt. No. 9) is granted, and the complaint is dismissed for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

**CONCLUSION**

It is therefore

ORDERED that defendants' motion (Dkt. No. 9) is granted; and it is further

ORDERED that the complaint is dismissed without prejudice.

IT IS SO ORDERED.

Date:   July 11, 2012
        Syracuse, New York

_____
Honorable Norman A. Mordue
U.S. District Judge